**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| ELIZABETH BROWN, THOMAS PEARSON, JANESHIA MARTIN, and NICHOLAS MOORE, individually and on behalf of all others similarly situated<br><br>Plaintiffs,<br><br>v.<br><br>HYUNDAI MOTOR AMERICA, and HYUNDAI MOTOR COMPANY, LTD.,<br><br>Defendants. | Civil Action No. 18-11249 (SDW) (JAD)<br><br>**OPINION** |

**WIGENTON, District Judge**

Before this Court is Defendant[1] Hyundai Motor America's motion to dismiss the First Amended Complaint ("FAC") pursuant to Federal Rule of Civil Procedure 12(b)(6). (ECF No. 22). Plaintiffs have opposed this motion, (ECF No. 24), and Defendant Hyundai Motor America ("HMA") has replied to same. (ECF No. 26). This opinion is issued without oral argument pursuant to Federal Rule of Civil Procedure 78. For the reasons stated herein, HMA's motion is **GRANTED**.

---

[1] As Defendant Hyundai Motor America notes in its moving brief, Plaintiffs have not properly served Hyundai Motor Company, Ltd. (ECF No. 22 at 14 n.1). Plaintiffs do not contest this fact, and as such, the Court does not consider Hyundai Motor Company, Ltd. a party to this litigation.

# I. BACKGROUND[2]

This putative class action arises out of an alleged defect found in certain model year 2011 through 2016 Hyundai Elantras with "Nu" 1.8 liter engines (the "Class Vehicles") (FAC ¶ 1). The defect resides in the the Class Vehicle's engine, specifically in the pistons, which are a component of the engine that creates the necessary force to power the car. (FAC ¶¶ 2, 80). The defect manifests with a knocking noise in the engine, either while the car is warming up or while driving. (FAC ¶ 2). The defect allegedly causes "total and irreparable engine failure," resulting in a loss of engine power, power steering, and brake assistance. (FAC ¶ 2).

Named Plaintiffs are residents of various states who purchased and currently own allegedly defective Class Vehicles. (FAC ¶¶ 16–57). Plaintiff Brown is a citizen of New Jersey who purchased a new 2013 Hyundai Elantra with a 1.8 liter "Nu" engine from an authorized Hyundai dealer located in Avenel, New Jersey. (FAC ¶¶ 16–18). Plaintiff Pearson is a citizen of Washington state who purchased a 2015 Hyundai Elantra[3] from Korum Hyundai in Puyallup, Washington. (FAC ¶¶ 28–30). Plaintiff Martin is a citizen of Georgia who purchased a used 2015 Hyundai Elantra with a 1.8 liter "Nu" engine from Superior Chevrolet in Decatur, Georgia. (FAC ¶¶ 39–41). Finally, Plaintiff Moore is a citizen of Illinois who purchased a used 2013 Hyundai Elantra from Green Chevrolet in Peoria, Illinois. (FAC ¶¶ 50–52).[4] Plaintiffs now bring this action on behalf of themselves and others similarly situated as a nationwide class, or, in the alternative as New Jersey, Washington, Georgia, and Illinois subclasses, alleging that

---

[2] The facts as stated herein are taken as alleged in Plaintiffs' First Amended Complaint ("FAC"). (ECF No. 633.) For purposes of this motion to dismiss, these allegations are accepted by the Court as true. *See Phillips v. Cty. of Allegheny,* 515 F.3d 224, 228 (3d Cir. 2008) ("The District Court, in deciding a motion [to dismiss under Rule] 12(b)(6), was required to accept as true all factual allegations in the complaint and draw all inferences from the facts alleged in the light most favorable to [the plaintiff].").

[3] The FAC does not state whether this Elantra was new or used.

[4] The Court notes that Plaintiffs Pearson and Moore fail to allege that their Hyundai Elantras contain or contained the affected 1.8 liter "Nu" engines. Such a pleading failure is potentially fatal to their claims. Nevertheless, the Court will address the further substantive aspects of Pearson and Moore's claims.

HMA knew about the piston defect, failed to inform consumers of the defect, and that Plaintiffs relied on those omissions in purchasing their Class Vehicles. (FAC ¶¶ 3, 19, 31, 42, 53, 107). Plaintiffs set forth eleven counts against HMA: (1) breach of express warranty; (2) breach of implied warranty, (3) breach of the written warranty under the Magnuson-Moss Warranty Act, (4) violations of the New Jersey Consumer Fraud Act, (5) violations of the Washington Consumer Protection Act, (6) Violations of the Georgia Fair Business Practices Act, (7) violations of the Georgia Uniform Deceptive Trade Practices Act, (8) violations of the Illinois Consumer Fraud and Deceptive Practices Act, (9) violations of the Illinois Uniform Deceptive Trade Practices Act,[5] (10) common law fraud, and (11) unjust enrichment. (FAC ¶¶ 116–234). Plaintiffs have since expressly waived Plaintiffs Martin and Moore's implied warranty claims, Plaintiff Brown's common law fraud claim, and Counts VII and VIII, and as such, those claims are dismissed with prejudice. (ECF No. 24 at 31 n.4, 45 n.15, 51 n.18, and 52 n.19).

## II. LEGAL STANDARD

When considering a motion to dismiss under Rule 12(b)(6), a court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips*, 515 F.3d at 231 (quoting *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Fowler v. UPMC Shadyside*, 578 F.3d 203, 210–11 (3d Cir.

---

[5] Plaintiffs mistitled Count IX, labeling it repetitively as a violation of the Illinois Consumer Fraud and Deceptive Practices Act, but in the following paragraphs of the FAC they set out their claims under the Illinois Uniform Deceptive Trade Practices Act.

2009) (discussing the *Iqbal* standard). If the "well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint should be dismissed for failing to show "that the pleader is entitled to relief" as required by Rule 8(a)(2). *Iqbal*, 556 U.S. at 679.

Pursuant to Rule 9(b), plaintiffs alleging fraud must "meet a heightened pleading standard by 'stat[ing] with particularity the circumstances constituting fraud[.]'" *N.Y.C. Emps.' Ret. Sys. v. Valeant Pharm. Int'l, Inc.*, No. 18-0032, 2018 WL 4620676, at *2 (D.N.J. Sept. 26, 2018) (quoting Fed. R. Civ. P. 9(b)). Plaintiffs can satisfy this heightened standard by alleging dates, times, places and other facts with precision. *Park v. M & T Bank Corp.,* No. 09-02921, 2010 WL 1032649, at *5 (D.N.J. Mar. 16, 2010).

### III. DISCUSSION

#### A. Article III Standing

To bring a suit in federal court, a plaintiff must have standing pursuant to Article III of the United States Constitution. To establish Article III standing, a plaintiff must show: (1) injury in fact, (2) causation, and (3) redressability. *See Lujan v. Defs. of Wildlife,* 504 U.S. 555, 560–61 (1992); *Horvath v. Keystone Health Plan E., Inc.,* 333 F.3d 450, 455 (3d Cir.2003). To demonstrate an injury in fact, a plaintiff must demonstrate the invasion of a legally protected interest which is "(a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Lujan,* 504 U.S. at 560 (citations and quotations omitted). Furthermore, "there must be a causal connection between the injury and the conduct complained of—the injury has to be 'fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court." *Id.* at 56–61 (quoting *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 41–42 (1976). Last, "it must be 'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.'" *Id.* (quoting

*Simon*, 426 U.S. at 38, 43). "[T]he injury must affect the plaintiff in a personal and individual way." *Id.* at 560 n.1.

HMA argues that Plaintiff Pearson lacks Article III standing because his claims for economic harm are either too speculative or inadequately pleaded. (ECF No. 22 at 29–30; ECF No. 26 at 10–12). The Court agrees. The engine in Pearson's Elantra failed in July of 2018, with approximately 76,000 miles on the car. (FAC ¶ 32). Pearson contacted HMA about the issue, and HMA towed his car to Car Pros Hyundai in Renton, Washington. (FAC ¶ 33). HMA agreed to cover the necessary engine replacement under Pearson's warranty, but advised him that he would need to pay out of pocket for a rental car. (FAC ¶ 34). When Pearson asked if HMA would reimburse him, HMA could not guarantee that the rental car costs would be reimbursed. (FAC ¶ 35). Pearson has spent approximately $800 on rental cars to date. (FAC ¶ 36). The FAC conspicuously leaves open the possibility that Pearson will be reimbursed at some point for his rental car fees. "When a plaintiff claims that a defendant's threatened injury is the source of his standing, he must show that the threatened injury is so imminent as to be 'certainly impending.'" *Pub. Interest Research Grp. of N.J., Inc. v. Magnesium Elektron, Inc.*, 123 F.3d 111, 122 (3d Cir. 1997) (quoting *Whitmore v. Arkansas*, 495 U.S. 149, 155–58 (1990)). The FAC has not shown that Pearson's out-of-pocket rental car costs are "certainly impending," and thus Pearson has failed to establish Article III standing. *See Bay Acquisition, LLC v. Heller*, No. 08-3769, 2010 WL 3211146, at *2 (D.N.J. Aug. 13, 2010) (denying Article III standing where plaintiff's claim of injury was based on the *possibility* that Army Corps of Engineers may seek to acquire or condemn a property at some future date).

Pearson also argues that his Article III standing is buttressed by allegations of overpayment for his Elantra and the diminished value of that vehicle. (ECF No. 24 at 14–15).

However, the FAC contains one mention of overpayment that could apply to Pearson, where it states generally that Plaintiffs "overpaid for their vehicles." (FAC ¶ 122). While overpayment is a cognizable form of injury, such a conclusory allegation is insufficient to establish Article III standing. *See Estrada v. Johnson & Johnson*, No. 16-7492, 2017 WL 2999026, at *15 (D.N.J. July 14, 2017) (finding "threadbare allegation that" Plaintiff purchased product at a premium, "without any factual allegations to support that claim" insufficient to support Article III injury-in-fact requirement).

Pearson's claims of future repairs and diminished value of his vehicle are similarly flawed. Pearson's claim of future repairs is based on the conclusory allegation that the replacement engines provided under the warranty are "just as likely to fail as the original engine due to it containing the same latent defect." (FAC ¶ 4). Plaintiffs have not asserted facts showing that HMA's replacement engines contain the same defects alleged to exist in the Class Vehicles' original engines, and even if they had, Plaintiffs have not alleged that *all* engines are *certain* to fail, so any claim based on the future repair costs of a replacement engine are, again, impermissibly speculative. Lastly, Pearson's diminished value claim is also based on a one-line conclusory allegation without supporting facts. (FAC ¶ 37). This allegation, without more, is insufficient to establish standing. *See Chan v. Daimler AG*, No. 11-5391, 2012 WL 5827448, at *9 (D.N.J. Nov. 9, 2012) (holding that allegations that plaintiff "traded in his Mercedes-Benz E63 for an amount below fair market value," and that a vehicle's engine defect made it "worth less than [it] otherwise would [have been]" were not sufficient to establish Article III standing because there "must be a factual predicate upon which th[e] Court may draw the plausible inference that Plaintiffs' vehicles did, in fact, diminish in value as a result of the allegedly

defective engines"). As such, Plaintiff Pearson lacks Article III standing, and all his claims are dismissed.

**B. Breach of Express Warranty[6]**

   1. <u>Plaintiff Brown</u>

To plead a claim for breach of express warranty under New Jersey law, a plaintiff "must allege (1) a contract between the parties; (2) a breach of that contract; (3) damages flowing therefrom; and (4) that the party stating the claim performed its own contractual obligations." *Frederico v. Home Depot,* 507 F.3d 188, 203 (3d Cir. 2007). At the time that Brown's engine failed, her Elantra was covered by Hyundai's 10-year/100,000 mile powertrain warranty. (FAC ¶ 23). Under the terms of that warranty, Brown was required to perform certain maintenance on her vehicle and produce maintenance records to receive warranty coverage. (ECF No. 23-1 at 23, 25). Brown makes the single assertion that "Plaintiffs and the Class Members have complied with all obligations under the warranty, or otherwise have been excused from performance of said obligations as a result of Defendant['s] conduct described herein." (FAC ¶ 126). Brown's claim of compliance is conclusory, and her determination of excusal is a legal conclusion. "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do . . . [, n]or does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement." *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 557 (2007)).

Brown also improperly asserts that future discovery will show that she did comply with the terms of the warranty. However, Plaintiffs may not use the prospect of future discovery as a prop to support the sufficiency of their existing FAC. *See Flaherty v. Guala Pack N.A., Inc.*, No.

---

[6] The Court assumes, as the parties did, that for the purposes of a motion to dismiss, the law of the named plaintiff's state sub-class applies to his or her breach of contract claims.

17-8895, 2019 WL 1375706, at *3 (D.N.J. Mar. 27, 2019) (collecting cases). Brown has thus failed to state a claim for breach of express warranty under New Jersey law.

2. Plaintiff Martin

Under Georgia law, "[a] manufacturer's liability for breach of an express warranty derives from, and is measured by, the terms of that warranty." *Hines v. Mercedes-Benz USA, LLC*, 358 F. Supp. 2d 1222, 1227 (N.D. Ga. 2005). Georgia law also imposes a requirement that a plaintiff give "(1) notice of the defect and (2) a reasonable opportunity to repair the defect." *Roland v. Ford Motor Co.*, 655 S.E.2d 259, 264 (Ga. Ct. App. 2007) (quoting *Knight v. Am. Suzuki Motor Corp.*, 612 S.E.2d 546, 549 (Ga. Ct. App. 2005)). It is thus the refusal to remedy the defect or failure to do so despite trying that constitutes a breach of an express warranty. *Id.*

Martin's car was not under warranty when the engine failed, which she does not dispute. (FAC ¶ 46; ECF No. 24 at 18). Instead, Martin argues that the warranty at issue is unconscionable, which absolves her of the durational limits of the coverage. (ECF No. 24 at 18). Martin claims that the warranty provisions are unconscionable because they "knowingly sold a defective product without informing consumers about the defect," and because "Plaintiffs and Class Members had no meaningful choice in determining the[] time limitations the terms of which unreasonably favored Defendant[]," and finally because a "gross disparity in bargaining power existed between Defendant[] and the Class Members." (FAC ¶ 123–25). The Northern District of Georgia has made it quite clear that a defendant's "knowledge of the alleged defect at the time of sale, standing alone, is insufficient to render the [warranty's] time and mileage limitations unconscionable. *McCabe v. Daimler AG*, 948 F. Supp. 2d 1347, 1359 (N.D. Ga. 2013). *McCabe* left open the possibility that allegations supporting unconscionability could include a lack of bargaining power between the plaintiff and defendant and a lack of meaningful

8

choice in determining the time and mileage limitations of the warranty. *Id.* However, Plaintiffs have provided no factual predicate to support the conclusory statements regarding a lack of meaningful choice and lack of bargaining power mentioned above. Plaintiff Martin has thus failed to state a claim for breach of express warranty.

3. Plaintiff Moore

To state a claim for a breach of express warranty under Illinois law, a plaintiff must establish "the terms of the warranty, the failure of some warranted part, a demand upon the defendant to perform under the terms of the warranty, a failure of the defendant to do so, a compliance with the terms of the warranty by the plaintiff, and damages measured by the terms of the warranty." *Hasek v. DaimlerChrysler Corp.*, 745 N.E.2d 627, 638 (Ill. App. Ct. 2001). Like Martin, Moore does not dispute that his car was not under warranty at the time of the engine failure, and instead argues that the warranty is unconscionable. (ECF No. 24 at 18). Moore relies on the same three paragraphs of the FAC as Martin in pleading unconscionability.

Under Illinois law, a contract can be either substantively or procedurally unconscionable. *Razor v. Hyundai Motor Am.*, 854 N.E.2d 607, 622 (Ill. 2006). "Procedural unconscionability exists when a contractual term is so difficult to find, read, or understand that the party could not fairly be said to have been aware he was agreeing to it," and "substantive unconscionability refers to contractual terms that are inordinately one-sided in a party's favor." *Disher v. Tamko Bldg. Prods., Inc.*, No. 14-740, 2018 WL 905362, at *3 (S.D. Ill. Feb. 15, 2018). A contract of adhesion is not automatically unenforceable, and a party must allege "additional coercion or overreaching" to establish unconscionability. *Id.* Plaintiffs have made no such allegations. Illinois courts have rejected similar allegations of unconscionability as those made here. *See Schiesser v. Ford Motor Co.*, No. 16-730, 2017 WL 1283499, at *3 (N.D. Ill. Apr. 6, 2017)

(finding that insufficient allegations of defendant's knowledge of defect based on consumer complaints did not establish unconscionability); *Darne v. Ford Motor Co.*, No. 13-03594, 2015 WL 9259455, at *8 (N.D. Ill. Dec. 18, 2015) (finding conclusory allegations of lopsided bargaining power and a lack of meaningful choice in the warranty terms insufficient to plead unconscionability). Moore has not pled any additional coercion or overreaching beyond conclusory claims of unequal bargaining power and a lack of choice and thus fails to state a claim for breach of express warranty.

**C. Breach of Implied Warranty**

The only remaining implied warranty claim belongs to Brown, as Plaintiffs conceded Martin and Moore's implied warranty claims, *see supra* Part I, and Plaintiff Pearson's claims were dismissed for lack of standing, *see supra* Part III.A. "[T]he UCC, as adopted by New Jersey, specifically states that an implied warranty of merchantability ensures that goods sold are 'fit for the ordinary purposes for which such goods are used.'" *Dzielak v. Whirlpool Corp.*, 26 F. Supp. 3d 304, 329 (D.N.J. 2014) (quoting *Arlandson v. Hartz Mountain Corp.*, 792 F. Supp. 2d 691, 706 (D.N.J. 2011)). "As 'cars are designed to provide transportation, the implied warranty of merchantability is simply a guarantee that they will operate in a safe condition and substantially free of defects [and, therefore,] where a car can provide safe, reliable transportation[,] it is generally considered merchantable.'" *Henderson v. Volvo Cars of N.A., LLC*, No. 09-4146, 2010 WL 2925913, at *9 (D.N.J. July 21, 2010) (quoting *Carlson v. Gen. Motors Corp.*, 883 F.2d 287, 297 (4th Cir. 1989)). Additionally, "courts in this District and others have held that the warrant of merchantability is not breached where a car has been driven for years before a defect manifested." *Stevenson v. Mazda Motor of Am., Inc.*, No. 14-5250, 2015 WL 3487756, at *13 (D.N.J. June 2, 2015) (collecting cases).

Brown had driven her Elantra for over four years and roughly 64,000 miles when her engine failed. (FAC ¶¶17, 20). At that point, Brown's Elantra was not covered by her New Vehicle Limited Warranty, but it was covered by her supplemental Powertrain Warranty. (FAC ¶¶ 99–100). Brown filed a complaint through Hyundai's authorized alternative dispute resolution program, which did not consider her claim because her engine had over 60,000 miles. (FAC ¶ 22). Furthermore, Hyundai determined that Brown's engine failed due to oil sludge buildup, a sign of Brown's purported inadequate maintenance of her vehicle and a purported failure to comply with the terms of her warranty. (FAC ¶ 23). Nevertheless, Brown can—and does—still drive her car. (FAC ¶ 18).

While implied warranty claims are not universally dismissed at the pleading stage where cars have been driven for years and many thousands of miles, *see Henderson*, 2010 WL 2925913, at *9, the Court finds that the facts here are more in line with those of *Stevenson* and *Glass v. BMW of N. Am.*, No. 10-5259, 2011 WL 6887721 (D.N.J. Dec. 29, 2011). In both *Stevenson* and *Glass*, a key factor in dismissing the implied warranty claims was the fact that the plaintiffs were still able to drive their cars despite the alleged defects. 2015 WL 3487756, at *13; 2011 WL 6887721, at *15. Here, Brown was also able to drive her car after the repair. Furthermore, the New Vehicle Limited Warranty period had expired, as it had in *Stevenson*, 2015 WL 3487756, at *13. Additionally, Brown purportedly failed to properly maintain her car, which Hyundai determined resulted in the engine failure. (FAC ¶ 23). These facts taken together lead this Court to believe that dismissal of Brown's implied warranty claim is appropriate at this stage.

**D. Magnusson-Moss Warranty Act**

"Claims under the [Magnuson-Moss Warranty Act] depend upon the disposition of the underlying state law warranty claims." *Argabright v. Rheem Mfg. Co.*, 201 F. Supp. 3d 578, 600 (D.N.J. 2016). Because Plaintiffs have failed to state any of their state law warranty claims, their Magnuson-Moss Warranty Act claims must also be dismissed. *Id.* at 601.

**E. Fraud**

   1. Plaintiff Brown's Claim under the New Jersey Consumer Fraud Act ("NJCFA")

"To state a claim under the NJCFA, a plaintiff must allege that the defendant engaged in an unlawful practice that caused an ascertainable loss to the plaintiff." *Frederico*, 507 F.3d at 202. An unlawful act may be an affirmative act,[7] knowing omission, or regulatory violation. *Id.* An actionable omission under the NJCFA occurs where "the defendant (1) knowingly concealed (2) a material fact (3) with the intention that the consumer rely upon the concealment." *Arcand v. Brother Int'l Corp.*, 673 F. Supp. 2d 282, 297 (D.N.J. 2009). "Implicit in the showing of an omission is the underlying duty on the part of the defendant to disclose what he concealed to induce the purchase." *Id.* A claim under the NJCFA is subject to the heightened pleading standards of Federal Rule of Civil Procedure 9(b). *Lieberson v. Johnson & Johnson Consumer Cos.*, 865 F. Supp. 2d 529, 538 (D.N.J. 2011).

HMA alleges that Brown's NJCFA claim fails because she has not adequately pleaded that HMA knew of the alleged piston defect. (ECF No. 22 at 42–44). The Court agrees and finds the recent case in this district, *Schechter v. Hyundai Motor America*, No. 18-13634, 2019 WL 3416902 (D.N.J. July 29, 2019), particularly instructive. *Schechter* concerned a putative

---

[7] Plaintiffs have not alleged any affirmative misrepresentations by Hyundai, and have effectively conceded as much by failing to address Defendant's affirmative misrepresentation arguments in its motion. As such, the Court assumes that Plaintiffs fraud claims are premised on HMA's omissions.

class action alleging that the defendants fraudulently concealed the fact that 2017 and 2018 Santa Fe and Santa Fe Sport SUVs contained a defective powertrain. *Id.* at *1. The *Schechter* plaintiff asserted an NJCFA claim alleging that the defendants, "concealed the Powertrain Defect from the owners and lessees of the Class Vehicles at the time of sale or lease." *Id.* at *6. As support for his claim, the *Schechter* plaintiff "reference[d] 29 consumer grievances which were posted on the NHTSA's [National Highway Traffic Safety Administration] website by Class Vehicle owners . . . [and] also point[ed] to two TSBs issued by Defendants." *Id.*

The *Schechter* Court held that the plaintiff failed to state an NJCFA claim because he had failed to adequately plead that the defendants had knowledge of the defect. *Id.* The *Schechter* Court pointed to the fact that the complaint did not allege that the defendants monitored or tracked the NHTSA website, or that NHTSA informed the defendant about the posted complaints. *Id.* "Absent such allegations, consumer complaints on third-party websites are insufficient to support a manufacturer's knowledge of an alleged defect." *Id.* (collecting cases). The *Schechter* Court further argued that even if it were to assume that the defendants knew of the online postings, the consumer complaints and TSBs did not indicate that the defendants had knowledge of the defect because: (1) "[a]pproximately half of the consumer complaints and two of the TSBs were neither posted nor issued before" the date on which the plaintiff leased his vehicle, and (2) the consumer complaints issued or posted after the date on which the plaintiff leased his vehicle had to do with a vehicle the plaintiff did not lease or did not specify a vehicle. *Id.* at 6–7.

Based on the facts presently before this Court, *Schechter's* reasoning applies with equal force. Plaintiffs allege, upon information and belief, that HMA possessed knowledge of the alleged defect, "through (1) their own records of customers' complaints, (2) dealership repair

13

records, (3) records from the National Highway Traffic Safety Administration (NHTSA), (4) warranty and post-warranty claims, (5) internal pre-sale durability testing and TSBs, and ([6]) other various sources." (FAC ¶ 92). Plaintiffs plead no further facts related to sources 1, 2, 4, and 6, and such bare bones allegations are insufficient to satisfy the heightened pleading standard of Rule 9(b), even when relaxed for omissions based allegations.

As to the NHTSA records, Plaintiffs make no allegations that HMA monitored the NHTSA website. And, even if the Court assumes that HMA did monitor NHTSA complaints, every NHTSA complaint listed in the FAC, save two, post-dates August 2013, when Brown purchased her vehicle. (FAC ¶¶ 17, 97). Furthermore, the TSB that Brown purports to rely on was issued on March 3, 2014, after Brown had purchased her car. (FAC ¶ 83). Brown "cannot rely on events which occurred after [her purchase], in order to establish that Defendants were aware of the alleged defect during that relevant timeframe." *Schechter*, 2019 WL 3416902, at *6 (collecting cases).[8] As for the two complaints that post-date Brown's purchase, the FAC states that the complaints are about Hyundai Elantras, but Plaintiffs do not allege that these complaints pertain to Hyundai Elantras with the specifically affected 1.8 liter "Nu" engines. (FAC ¶ 97). Brown has thus failed to plead that HMA had the requisite knowledge to establish a claim under the NJCFA and her claim must be dismissed.

2. Plaintiff Martin's Claims under the Georgia Fair Business Practices Act and Georgia Common Law Fraud

Plaintiff Martin may sue under the Georgia Fair Business Practices Act ("GFBPA") so long as she suffered injury or damages "as a result of consumer acts or practices" in violation of the GFBPA. Ga. Code Ann. § 10-1-399. "A private [G]FBPA claim has three elements: a violation of the Act, causation, and injury." *Amin v. Mercedes-Benz USA, LLC*, 301 F. Supp. 3d

---

[8] This same reasoning applies to the complaints posted on the linked online forum page in FAC paragraph 96.

1277, 1289 (N.D. Ga. 2018) (quoting *Tiismann v. Linda Martin Homes Corp.*, 637 S.E.2d 14, 17 (Ga. 2006)). Martin is also required to show that she justifiably relied on HMA's consumer acts or practices. *Id.* Martin alleges that HMA has violated the GFBPA by "[r]epresenting that goods or services are of a particular standard, quality, or grade," while they were of another and "[a]dvertising goods or services with intent not to sell them as advertised." (FAC ¶ 176 (quoting Ga. Code Ann. § 10-1-393(b)(7), (9))).

HMA challenges Martin's pleading of all three elements of a GFBPA claim. (ECF No. 22 at 54). HMA further argues that Martin has not pleaded that she satisfied the notice requirement of the GFBPA. (ECF No. 22 at 53 n.19). Plaintiffs argue that pre-suit notice is not required for a remote manufacturer under Georgia law. (ECF No. 24 at 51).

A GFBPA plaintiff must comply with the *ante litem* requirement of the statute which requires that the plaintiff provide to the defendant "a written demand for relief, identifying the claimant and reasonably describing the unfair or deceptive act or practice relied upon and the injury suffered," "at least 30 days prior to the filing of any such action." *Alvear v. Sandy Springs Toyota, Inc.*, 775 S.E.2d 172, 177 (Ga. Ct. App. 2015) (quoting Ga. Code Ann. § 10-1-399(b)). *In re Volkswagen Timing Chain Product Liability Litigation*, the case Plaintiffs rely on for the proposition that pre-suit notice is not required for a remote manufacturer, cites to *In re Bridgestone/Firestone, Inc. Tires Products Liability Litigation*, 155 F. Supp. 2d 1069, 1009–10 (S.D. Ind. 2001), and explains in a parenthetical that this Southern District of Indiana case surveyed cases in Georgia and determined that the filing of a complaint satisfies the notice requirement. No. 16-2765, 2017 WL 1902160, at *13 (D.N.J. 2017). *Bridgestone/Firestone* and *In re Volkswagen* however, were both analyzing the pre-suit notice requirement of Uniform Commercial Code § 2-607, not the specific pre-suit notice requirement of the GFBPA. 2017 WL

15

1902160, at *13; 155 F. Supp. 2d at 1110. Furthermore, the Georgia case that *Bridgestone/Firestone* cites, *Hudson v. Gaines*, 403 S.E.2d 852 (Ga. Ct. App. 1991), was issued fourteen years before *Alvear* which expressly rejects the proposition that a complaint can satisfy the GFBPA's notice requirement. 775 S.E.2d at 177. Martin has thus failed to state a claim under the GFBPA.

As for Martin's common law fraud claim, she must plead "(1) false representation by defendant; (2) scienter; (3) intent to induce the plaintiff to act or refrain from acting; (4) justifiable reliance by the plaintiff; and (5) damage to the plaintiff." *Next Century Comms. Corp. v. Ellis*, 318 F.3d 1023, 1027 (11th Cir. 2003). "In the context of fraudulent-concealment claims, the scienter element requires that 'the alleged defrauder had actual, not merely constructive, knowledge of the fact concealed'" and the alleged defrauder must be under an obligation to disclose that fact. *McCabe*, 948 F. Supp. 2d at 1368 (quoting *ReMax N. Atlanta v. Clark*, 537 S.E.2d 138, 142 (Ga. Ct. App. 2000)).

HMA argues that Martin's common law fraud claim fails because Martin bought her used Elantra from a Chevrolet dealer and thus, Hyundai had no knowledge of her purchase and no duty to disclose any alleged defect. (ECF No. 22 at 58). Plaintiffs do not respond to this argument. "Absent a confidential relationship, no duty to disclose exists between parties engaged in arms-length business transactions." *In re Atlas Roofing Corp. Chalet Shingle Prods. Liab. Litig.*, No. 13-md-2495, 2018 WL 2765961, at *9 (N.D. Ga. June 8, 2018). Plaintiffs have alleged no such confidential relationship. At most, Plaintiffs have alleged an arm's length business transaction between Martin and Superior Chevrolet. (FAC ¶ 40). Where there was no pre-purchase communication or relationship between plaintiff and defendant, Georgia law imposes no duty to disclose. *See In re Atlas*, 2018 WL 2765961, at *9–10 (imposing no duty to

16

disclose where plaintiffs had bought allegedly defective shingles made by the defendant and alleged that defendant actively concealed defects in the shingles, but had "not established that they had any pre-purchase communications or relationship with [the defendant] at all, let alone a confidential or dependent relationship); *McCabe v. Daimler AG*, 160 F. Supp. 3d 1337, 1352 (N.D. Ga. 2015) (imposing no duty to disclose on Daimler AG, the manufacturer of Mercedes-Benz vehicles, even where plaintiff had bought an allegedly defective Mercedes-Benz from a Mercedes-Benz dealer). Thus, Martin has failed to state a Georgia common law fraud claim and her claim is dismissed.

   3. Plaintiff Moore's Claims under the Illinois Uniform Deceptive Trade Practices Act and Illinois Common Law Fraud[9]

The Illinois Uniform Deceptive Trade Practices Act ("IUDTPA") "provides a private right of action for injunctive relief, and such a claim is permissible as a consumer action when 'the consumer can allege facts indicating [a] likelihood of damage in the future.'" *Aliano v. Louisville Distilling Co.*, 115 F. Supp. 3d 921, 928 (N.D. Ill. 2015) (quoting *Robinson v. Toyota Motor Credit Corp.*, 735 N.E.d 2d 724, 735 (Ill. App. Ct. 2000)). "The problem in most consumer actions under the [IUDTPA] is the inability to allege facts indicating the likelihood of damage in the future." *Id.* (quoting *Howard v. Chi. Transit Auth.*, 931 N.E.2d 292, 299 (Ill. App. Ct. 2010)). This is especially true with cases alleging deceptive practices, because the harm from those practices has usually already occurred. *Int'l Star Registry of Ill. v. ABC Radio Network, Inc.*, 451 F. Supp. 2d 982, 990 (N.D. Ill. 2006).

Moore has not alleged a sufficient likelihood of future harm. Plaintiffs allege in one conclusory statement that "[e]ven where a replacement engine is provided under the warranty,

---

[9] Moore does not respond to Defendants' arguments seeking dismissal of its Illinois Consumer Fraud and Deceptive Practices Act and instead requests leave to amend that claim. (ECF No. 24 at 52 n.19). Plaintiff Moore's Illinois Consumer Fraud and Deceptive Practices Act claim is therefore dismissed.

the replacement is just as likely to fail as the original engine due to it containing the same latent defect." (FAC ¶ 4). Moore has already had his engine replaced, (FAC ¶ 56), and has alleged no additional facts supporting his conclusion that the replacement engine will inevitably fail for the same reasons his original engine failed. Moore has "already claimed that it has been deceived about the quality of [HMA's] engine; any future monetary harm it incurs will be the product of that past deception, not some future deception, which makes an injunction under the IUDTPA an inappropriate form of relief." *Darne v.* 2015 WL 9259455, at *12. Accordingly, Moore's IUDTPA claim is dismissed.

To adequately plead his common law fraud claim under Illinois law, Moore must allege:

> (1) the concealment of a material fact; (2) that the concealment was intended to induce a false belief, under circumstances creating a duty to speak; (3) that the innocent party could not have discovered the truth through a reasonable inquiry or inspection, or was prevented from making a reasonable inquiry or inspection and relied upon the silence as a representation that the fact did not exist; (4) that the concealed information was such that the injured party would have acted differently had he been aware of it; and (5) that reliance by the person from whom the fact was concealed led to his injury.

*Int'l Star Registry*, 451 F. Supp. 2d at 989 (quoting *Trustees of the AFTRA Health Fund v. Biondi*, 303 F.3d 765, 777 (7th Cir. 2002)). Additionally, Moore must allege that HMA had a duty to disclose the defect to him. *Connick v. Suzuki Motor Co.*, 675 N.E.2d 584, 593 (Ill. 1996). That duty arises where either the plaintiff and the defendant are in a confidential or fiduciary relationship, or where the plaintiff "places trust and confidence in defendant, thereby placing defendant in a position of influence and superiority over plaintiff." *Id.* The second kind of relationship "may arise by reason of friendship, agency, or experience." *Id.* Moore has alleged no special relationship with HMA. He purchased his Elantra from Green Chevrolet, not HMA or an HMA authorized dealer, and even if Moore had purchased his Elantra from an authorized

18

dealer, that alone would not give rise to a duty to disclose. *See id.* ("Regarding the relationship between plaintiffs and Suzuki, the complaint merely alleged that plaintiffs had purchased a [Suzuki] Samurai [SUV] from an authorized Suzuki dealer, and that Suzuki manufactured and distributed the Samurai. Nowhere in the complaint did plaintiffs sufficiently allege that they were in a confidential or fiduciary relationship with Suzuki or that Suzuki was in a position of superiority over them[, and w]ithout such allegations, plaintiffs' complaint did not allege a duty to disclose material facts which could give rise to a claim for fraudulent concealment.") As such, HMA had no duty to disclose the defect to Moore and his Illinois common law fraud claim is dismissed.

**F. Leave to Amend**

Defendants request that the Court deny Plaintiffs leave to amend the FAC because they believe amendment would be futile and prejudicial. (ECF No. 26 at 31). While Plaintiffs have already amended their complaint once, this is the first time the Court has addressed it dispositively. Given that there is a general presumption in favor of allowing a plaintiff to amend its pleadings under Rule 15(a)(2), *Hunter v. Dematic USA*, 2016 WL 2904955, at *6 (D.N.J. May 18, 2016), the Court will allow Plaintiffs to amend their complaint except where explicitly stated. The Court will not allow Plaintiffs leave to amend Brown's implied warranty claim, Martin's common law fraud claim, and Moore's IUDTPA and common law claims, as amendment would be futile in those cases and they are thus dismissed with prejudice.[10]

---

[10] Fatal to these claims are Brown's ability to currently drive her car, and Martin and Moore's purchase of their cars from non-HMA dealerships, and the fact that Moore cannot allege future deception for the purposes of the IUDTPA.

## IV. CONCLUSION

For the reasons stated herein, the Court grants HMA's motion to dismiss, except as it pertains to Plaintiffs' leave to amend certain aspects of the FAC. Plaintiffs shall have thirty days to file an amended complaint in accordance with this opinion. An appropriate order follows.


DATED: August 30, 2019

                                                          s/ *Susan D. Wigenton*_____
                                                          **SUSAN D. WIGENTON**
                                                          **UNITED STATES DISTRICT JUDGE**